UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

                                        06-CR-219(ERK)

JAVIER CORTES-ELIOSA,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE
<u>DEFENDANT'S MOTION TO SUPPRESS</u>


                                              ROSLYNN R. MAUSKOPF
                                              United States Attorney
                                              Eastern District of New York

                                              One Pierrepont Street
                                              Brooklyn, New York  11201

Solette Magnelli
Department of Justice, Trial Attorney
(Of Counsel)

Pamela K. Chen
Assistant U.S. Attorney
(Of Counsel)

PRELIMINARY STATEMENT

The government submits this memorandum of law in opposition to defendant Javier Cortes-Eliosa's pretrial motions in which he seeks to suppress his post-arrest statements to the Border Patrol, arrest photograph, and the identification made by the victim based on his arrest photograph, all as fruits of his allegedly unconstitutional arrest. The defendant also argues that his post-arrest statements were obtained in violation of his Fifth and Sixth Amendment rights because he was not properly Mirandized and did not waive his right to counsel. Lastly the defendant asserts that the single-photograph identification, made by the victim, was unduly suggestive and should be suppressed.[1]

As discussed below, the defendant's motions should be denied as they are based wholly on conclusory allegations. The defendant has failed to file an affidavit alleging disputed issues of material fact based on personal knowledge that, if proven at a hearing, would require granting the relief requested. Furthermore, the defendant's motions to suppress the statements made to the Border Patrol, the arrest photograph, and the victim's out-of-court identification of the defendant, are without merit and should be denied.

FACTUAL AND PROCEDURAL BACKGROUND

---

[1] The defendant also seeks to suppress an insurance reinstatement form, which the government previously identified as having been seized from the defendant after his arrest. However, upon further investigation, the government has determined that the reinstatement form was provided to the government by the victim in this matter. Therefore, the defendant's motion regarding the insurance reinstatement form should be disregarded as the form was not seized from the defendant at the time of his arrest in Arizona.

2

A. <u>Cortes-Eliosa's Illegal Activities</u>

For approximately six years, Jane Doe worked for Cortes-Eliosa as a prostitute in New York City as well as Charlotte and Greensboro, North Carolina.  <u>See</u> Affidavit and Complaint in Support of Arrest Warrant ("Complaint") at ¶ 5.  When she worked out of state, she would stay at a brothel for a week, and then return to New York.  <u>Id</u>.  Her earnings were kept by the brothel owner, who gave them to the man who drove Jane Doe back to New York, at which point they were given to the defendant.  <u>Id</u>.  The defendant wired money to his family in Mexico through various money remitting businesses, including Western Union, Transfast and Vigo.  <u>Id.</u>  Cortes-Eliosa also forced Jane Doe to have sexual intercourse with him, especially after he had been drinking.  <u>Id.</u> at ¶ 6.  If Jane Doe complained about the working conditions as a prostitute or refused to have sex with him, he would become violent and slap her.  <u>Id</u>.

In approximately August 2005, Cortes-Eliosa left New York and returned to Mexico, telling Jane Doe that another man, "Jesus" LNU, would be responsible for her, collect her earnings, and send them to Mexico. <u>Id.</u> at ¶ 7.  Jane Doe continued to remit her prostitution earnings to Cortes-Eliosa.

B. <u>Cortes-Eliosa's Arrest and Post-Arrest Statements</u>

At a hearing in this matter, the government would establish the following by a preponderance of the evidence:  On March 1, 2006, a Border Patrol agent was assigned Border Patrol duties near Green Valley, Arizona, approximately fifty kilometers (approximately 31.07 miles) from the International Boundary Fence.  At approximately 6:25 a.m., the agent was informed that an anonymous person had called the Nogales Border Patrol Station stating that there were several suspected illegal aliens standing in

his driveway. The agent went to the caller's driveway, several feet from a known smuggling load-up area, and encountered a group of individuals, including the defendant, with brush on their clothing. The agent identified himself as a U.S. Border Patrol Agent and inquired into their citizenship. All the individuals, including the defendant, stated that they were Mexican nationals. When asked if they had any immigration documents that would allow them to enter, remain, or pass through the U.S. legally, they all stated that they did not. The agent placed the individuals, including the defendant, under arrest and field processed them. The agent determined that the defendant: was present in the United States without having been admitted as 'paroled' following inspection by a Customs and Border Patrol Officer at a designated Port of Entry; was encountered by a Border Patrol Agent within 100 air miles of the United States/Mexico border; and had not establish that he had been physically present in the United States continuously for a fourteen-day period immediately prior to the date of encounter. Under 8 C.F.R. 212, the defendant was eligible for removal as an immigrant without proper documents. The individuals, including the defendant, were transported to the U.S. Border Patrol station in Nogales, Arizona for further processing.

In accordance with 8 C.F.R. 235, the agent questioned the defendant regarding any fear that he had in returning to Mexico; the defendant stated that he had no such fear. The defendant was also provided a written copy of his Miranda rights in Spanish, which he appeared to read. The defendant stated that he understood his rights and was willing to make a sworn statement and answer any questions without the presence of a lawyer.

During questioning, the defendant admitted that he had illegally crossed the International Boundary Fence on the west side of Nogales, Arizona on February 25, 2006, at approximately 7:00 p.m.  The defendant further admitted to paying a smuggler to arrange for his illegal entry into the United States, to entering into the United States illegally three times before, to prior arrests in the United States, and to living in Queens, New York from 1993 to 2005.[2]  The defendant was also advised of his right to confer with the Mexican Consulate, and chose to exercise that right.

The defendant was entered into the ENFORCE/IDENT and IAFIS systems.  Records revealed a lookout for the defendant by the New York division of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE").  On March 2, 2006, an arrest warrant was obtained for Cortes-Eliosa in this District charging the defendant with sex trafficking in violation of 18 U.S.C. 1591, and with violating the Mann Act under 18 U.S.C. 2421.   See Complaint.

C.    Indictment and Pre-Trial Motions

On March 30, 2006, the defendant was indicted in a two-count Indictment charging him with sex trafficking (18 U.S.C. §1591) and a Mann Act violation (18 U.S.C. § 2421).  Cortes-Eliosa was arraigned on the Indictment on April 12, 2006.  By consent of the defendant, time was excluded between April 13 and May 19, 2006 to allow the parties to engage in plea negotiations.

---

[2] A records check for the defendant confirmed that he had been arrested by the New York Police Department on one count of driving under the influence of alcohol on August 17, 2002.

On June 20, 2006, the parties appeared before the Honorable Edward R. Korman for a status conference. Judge Korman ordered the defendant to file any suppression and discovery motions with the assigned Magistrate Judge. On July 11, 2006, the Honorable Ramon E. Reyes issued an order requiring the defendant to file all suppression and discovery motions by July 19, 2006.

On July 19, 2006, the defense filed a motion requesting additional discovery, but failed to file any suppression motion. On August 2, 2006, the defendant filed the instant motion.[3]

## ARGUMENT

A. The Defendant's Motions Should Be Denied Without a Hearing Because He Has Failed to Allege Specific Factual Allegations Based on Personal Knowledge

A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence. See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (suppression hearing available only if there is a "factual issue to be resolved"); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("[T]he defendant must show that disputed issues of material fact exist before an evidentiary hearing is required"). Rather, a trial court is only required to grant such a hearing when the movant's affidavit contains specific factual allegations which, if proven at a hearing, would require granting the relief requested. United States v. Culotta, 413 F.2d 1343, 1346 (2d Cir. 1969).

---

[3] The defendant's suppression motion was dated July 29, 2006, which was a Saturday. With respect to his delinquent filing of this motion, defense counsel claims illness as the reason for filing the suppression motion past the July 19th deadline. Nevertheless, there was no mention of any forthcoming suppression motions in the eighteen-page discovery motion that was filed on July 19th. As a procedural matter, the suppression motion should be denied as untimely.

Courts in this district routinely require that specific allegations in support of a suppression motion be based on personal knowledge. See, e.g., United States v. Simpkins, 1996 WL 629567 (E.D.N.Y. 1996) (Nickerson, J.) (suppression motion denied because "defendant has failed to provide an affidavit based on her own personal knowledge"); United States v. Clement, 1995 WL 151786 (E.D.N.Y. 1995) (Johnson, J.) (affidavit in support of suppression motion is "insufficient if it is not based on personal knowledge"); United States v. Brumby, 1992 WL 373686 (E.D.N.Y. 1992) (Hurley, J.) (defendant's "failure to submit an affidavit based on personal knowledge bars his application for a hearing on these suppression issues"). As these cases hold, the defendant should not be permitted to require the Court and the government to go through a hearing unless he is willing to personally allege facts that support his suppression motion.

Here, the defendant has proffered no allegations whatsoever based on his personal knowledge. The only allegations are those set forth in the defense motion, which is not accompanied by any sworn statement, not even from defense counsel. Cf. Gillette, 383 F.2d at 848 (finding attorney's affidavit submitted insufficient because it failed to allege personal knowledge on the part of the attorney). In addition, the conclusory allegations set forth in the motion lack a "sufficiently definite, specific, detailed and non-conjectural factual basis for a hearing." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). For example, with regard to defendant's statements, the defense motion merely asserts that the "defendant did not validly waive his 6th Amendment right to an attorney" and "the government did not properly advise the defendant of his [Miranda] rights...." See Testaverde Ltr. at 3.

7

Accordingly, because the defendant has not met his burden his motion should be denied without a hearing on the matter.

B.    Should the Defendant Be Granted A Suppression Hearing, His Motion Should Be Denied On the Merits

In his motion, the defendant moves for the suppression of his post-arrest statements and all other physical evidence obtained as a result of his arrest on March 1, 2006. Specifically, Cortes-Eliosa claims that the Border Patrol agent lacked probable cause to stop, detain, interrogate, and search him, and that, therefore, all evidence seized as a result of his arrest, including statements made by the defendant, is tainted and therefore inadmissible. As discussed below, no evidence should be suppressed because the defendant's arrest was lawful and proper.

1.    The Border Patrol Agent Lawfully Approached, Questioned and Arrested the Defendant

Immigration officers are authorized "[t]o interrogate any alien or person believed to be an alien regarding his right to be or remain in the United States." 8 U.S.C. § 1357(a)(1); 8 C.F.R. § 287.5(a). Any such interrogation must comply with constitutional standards regarding searches and seizures. See generally United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Federal regulations codify the constitutional case law with respect to interrogations by immigration officers in general.

"Interrogation relating to one's identity or a request for identification ... does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the

Fourth Amendment." Id. at 216.  An immigration officer may ask questions of anyone as long as that officer does not restrain the freedom of an individual to walk away.  However, if the person refuses to answer and the police take additional steps to obtain an answer such that a reasonable person would not feel free to leave, then the Fourth Amendment imposes a minimum requirement of reasonable suspicion. Id. at 216, 217.

If the officer is aware of "specific and articulable facts" giving rise to "reasonable suspicion" that the person being questioned is an illegal alien in the United States, the immigration officer may briefly detain the person for questioning. 8 C.F.R. § 287.8(b).  The Supreme Court has defined reasonable suspicion as "some minimal level of objective justification" for suspecting criminal activity.  United States v. Sokolow, 490 U.S. 1, 7 (1989).  This standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence."  United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991).

The test for determining whether a stop is supported by "reasonable suspicion" is an objective one, and should be viewed in light of the totality of the circumstances.  Sokolow, 490 U.S. at 8.  In this regard, even acts that have an otherwise innocent explanation, when viewed together, demonstrate "reasonable suspicion."  Id. at 9.  Furthermore, the particular facts must be viewed in light of the experience of the law enforcement officers involved.  See Villegas, 928 F.2d at 516.

Because of the limited nature of the intrusion, stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest. See Brignoni-Ponce, 422 U.S. at 884-85.  A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more

9

information, may be the most reasonable alternative in light of the facts known to the officer at the time. Adams v. Williams, 407 U.S. 143, 145-46 (1972). Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop someone in the border area, including proximity to the border, previous experience with alien traffic, and information about recent illegal border crossings in the area. See Brignoni-Ponce, 422 U.S. at 884-85.

In the case at hand, the Border Patrol agent received an anonymous call regarding a group of suspected illegal aliens, who were standing in the driveway of the anonymous caller (a local resident) for no apparent reason, near a known smuggling load-up location, approximately 30 miles from the border, and covered in brush. All of these circumstances combined to establish reasonable suspicion regarding the defendant's immigration status. See United States v. Arvizu, 534 U.S. 266 (2002) (holding that Border Patrol stop was based on reasonable suspicion).

An "officer may question [individuals who are detained for a reasonable amount of time near the border] about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." Brignoni-Ponce, 422 U.S. at 881-82. Here, the agent asked the defendant about his citizenship and any documentation that he had, and made a lawful arrest based upon the information he received.

Accordingly, the stop, inquiry, and arrest of the defendant did not violate the Fourth Amendment, and no evidence resulting from that arrest, including his post-arrest statement, arrest photo, and out-of-court identification based on the arrest photo, should be suppressed.

10

2.      The Defendant was Properly Mirandized and Voluntarily Waived His Rights[4]

Defense counsel states, without argument, that the defendant's post-arrest "statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), in that the Government did not properly advise the Defendant of his rights under Miranda v. Arizona, supra." Testaverde Ltr. at 3.

To introduce a defendant's statements at trial, the government must demonstrate that an in-custody defendant voluntarily, knowingly, and intelligently waived his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 475 (1966). A waiver need not be explicit and can be inferred from the circumstances. See North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979); United States v. Ramirez, 79 F.3d 298, 305 (2d Cir. 1996). A determination as to the voluntariness of a defendant's statements requires an inquiry into the totality of the circumstances including, "the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991).

At an evidentiary hearing on this matter, the government would prove by a preponderance of the evidence that the defendant was properly advised of his Miranda rights, and that he waived those rights knowingly, intelligently, and voluntarily. The agent carefully reviewed the Miranda warnings with the defendant in the defendant's native Spanish language, which the defendant stated that he understood. The defendant was familiar with the criminal justice system, having admitted to being arrested three

---

[4]     To the extent that the defendant claims a Sixth Amendment violation based on his alleged denial of counsel, his argument is misplaced since the right to counsel under the Sixth Amendment attaches upon arraignment.

11

times in New York for having a suspended license, domestic violence, and driving under the influence. Similarly, the defendant was also familiar with his immediate situation, in that he admitted to crossing into the United States illegally three times before. Finally, the defendant consciously chose to decline legal representation while speaking to the agent, much as he consciously chose to take advantage of his right to speak with the Mexican Consulate. Accordingly, the totality of the circumstances reveal that the defendant was properly Mirandized, understood his rights, was familiar with the criminal justice system, and voluntarily agreed to speak with the agent without legal representation. Therefore, there is no basis to suppress the defendant's post-arrest statements.

3.      The Victim's Single-Photograph Identification Is Reliable

The victim's single-photograph identification of the defendant was not impermissibly suggestive.[5] The case at hand does not present circumstances so unnecessarily suggestive as to lead to a mistaken identification that would deny the defendant due process. The concern over single-photograph identification "'stems from the fact that usually, what is at stake is an identification of a complete stranger whom the witness encountered' under circumstances of emergency or emotional stress." United States v. Castro, 243 F. Supp. 2d 565, 570 (W.D.V.A. Feb. 6, 2003), *quoting* Manson v. Braithwaite, 432 U.S. 98, 112 (1977). However, where, as here, the individual making

---

[5]     The defendant's reliance on Stovall v. Denno, 388 U.S. 293 (1967) is misplaced, as that case was overruled by Griffith v. Kentucky, 479 U.S. 314 (1987). Regardless, the Court in Stovall upheld the actions of the police as appropriate when they brought a suspect to the hospital to see if a critically injured victim could identify him. Stovall, 388 U.S. at 302. Moreover, "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. Id.

12

the identification has a longstanding familiarity with the defendant, the identification is independently reliable, and therefore admissible. See, United States v. Perez, 2003 U.S. Dist. LEXIS 2666, No. 01 CR. 848(SWK), 2003 WL 721568, at *4 (S.D.N.Y. Feb. 28, 2003) (witness' "level of contact" with defendant, including numerous meetings and drug transactions over several years, was "sufficient to provide an independently reliable basis for his identification."); Martinez v. Artuz, 2001 U.S. Dist. LEXIS 6581, 99 Civ. 5744 (WHP) (GWG), 2001 WL 540737, at *9 (S.D.N.Y. May 22, 2001) (where witness knew petitioner for at least three years prior to the crime, saw him once a day and regularly spoke to him, trial court "properly determined that [the witness] was sufficiently familiar with [defendant] to obviate any possibility that the [challenged] lineup could have tainted her identification."); Espinal v. Duncan, 2000 U.S. Dist. LEXIS 17337, No. 00 Civ. 4844 (RWS), 2000 WL 1774960, at *2 (S.D.N.Y. Dec. 4, 2000)(emphasis added); (in-court identification was valid despite use of single photograph where trial court found an independent source of reliability, "namely that [the witness] already knew [petitioner] by first name as well as street name, . . . knew where [petitioner] lived and the car he drove, and had seen him at least 20 times in the prior year.") (internal quotation marks, brackets and citation omitted).

   The victim in this matter has known the defendant for more than seven years, having had a romantic relationship with him for most of that time.  This is simply not a case where a victim or witness was asked to identify a stranger from a single photograph.  Moreover, before the defendant was arrested by Border Patrol, the victim had provided substantial identifying information to law enforcement regarding the defendant.  Because the single photograph identification following the defendant's arrest

13

by the Border Patrol was merely confirmatory and independently reliable, it should not be suppressed.

## CONCLUSION

For the reasons previously set forth by the government, Javier Cortes-Eliosa's Motion to Suppress should be denied.

Dated:   Brooklyn, New York
         August 29, 2006

                                              ROSLYNN R. MAUSKOPF
                                              United States Attorney
                                              Eastern District of New York

Of Counsel:
     Solette Magnelli
     Pamela Chen